**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**FIRST CATHOLIC FEDERAL
CREDIT UNION,**

               **Plaintiff(s),**         CASE NUMBER: 09-14982
                                            HONORABLE VICTORIA A. ROBERTS

**v.**

**CUSO MORTGAGE, INC.,**

               **Defendant(s).**
_____/

**ORDER DENYING PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

**I.    BACKGROUND AND PROCEDURAL HISTORY**

    **A.    Subservicing Agreement**

On May 6, 2002, First Catholic Federal Credit Union and CUSO Mortgage, Inc. signed a Subservicing Agreement. CUSO agreed to service mortgage loans that First Catholic originated.

Section 8.2 of the Subservicing Agreement says:

(a)    Either party may, by delivering sixty (60) days prior written notice to the other, terminate this Agreement prior to the expiration of the Term if in the reasonable opinion of the party providing such notice the other . . . has materially breached its representations, warranties or convenants made in this Agreement, following the exhaustion by the party providing such notice of the dispute resolution procedures described in Section 3.07 of the Correspondent Services Agreement[.]

(b)    By providing sixty (60) days prior written notice to CUSO, [First Catholic] may terminate this Agreement upon payment of a fee equal to two (2) percent of the outstanding principal balance of each Loan as of the effective date of such notice.

. . .

>    (d) Upon termination of this Agreement by [First Catholic] or [CUSO] as to any or all of the Loans, [CUSO] shall deliver to [First Catholic] the Loan Files for Loans for which the servicing has been terminated and, if applicable, transfer the related Mortgage Escrow Account balances to the depository institution identified by [CUSO], and the parties reasonably shall cooperate with each other to provide the notices required by the Applicable Requirements of such termination.

### B. First Catholic's Initial Termination of CUSO's Right to Service Mortgages, and First Catholic's Retraction of its Initial Termination

In a letter dated June 1, 2009, First Catholic notified CUSO that it was terminating CUSO's right to service all mortgages as of August 1, 2009. According to First Catholic, CUSO materially breached the Subservicing Agreement, by failing to pay the insurance and taxes associated with the mortgages, comply with collection obligations, and promptly apply payments. First Catholic asked CUSO to deliver the loan files and all related mortgage escrow account balances to First Catholic.

In a letter dated July 8, 2009, CUSO disagreed that it materially breached the Agreement. And, according to CUSO, First Catholic must pay a 2% fee before it can terminate the Subservicing Agreement, and before CUSO is required to surrender loan files.

In a letter dated July 21, 2009, First Catholic retracted its June 1, 2009 termination letter and stated its expectation that CUSO would continue servicing mortgages.

### C. First Catholic's Second Termination of CUSO's Right to Service Mortgages

In a letter dated September 2, 2009, First Catholic notified CUSO that it

materially breached the Subservicing Agreement, by failing to properly report at least one borrower's mortgage interest to the IRS.

In a letter dated October 19, 2009, First Catholic notified CUSO that it was terminating the Subservicing Agreement due to a material breach, and it refused to pay the 2% fee. First Catholic said the effective date of termination would be a mutually agreeable one, and at least 60 days from the date of notice.

In a letter dated October 27, 2009, CUSO disagreed that it materially breached the Agreement, and said First Catholic must pay a 2% fee before termination.

### D. Procedural History

First Catholic filed a Complaint on December 23, 2009 for material and anticipatory breach of contract. In addition, First Catholic seeks a declaratory ruling.

Before the Court is First Catholic's "Motion for Preliminary Injunction." (Doc. #8). First Catholic asks the Court to: (1) order CUSO to transfer serviced files to the Mortgage Center LLC; and, (2) require First Catholic to place 2% of the outstanding principal balance for each serviced loan, into an escrow account with Central Corporate Credit Union until the dispute is resolved (although First Catholic does not believe it is required to pay a 2% fee).

## II. APPLICABLE LAW AND ANALYSIS

In determining whether to grant injunctive relief, the Court considers four factors:

(1) whether First Catholic has a "strong" likelihood of success on the merits;

(2) whether First Catholic would suffer irreparable harm if the Court does not issue the injunction;

3

(3) whether the preliminary injunction would cause substantial harm to others; and

(4) whether the public interest would be served by the preliminary injunction.

*See Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (citation omitted). "In making its determination, the 'district court is required to make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue.'" *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 380 (6th Cir. 2006) (quoting *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997)); *see also Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) ("Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal") (citation omitted); *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.").

Pursuant to paragraph 8.2(a) of the Subservicing Agreement – the paragraph First Catholic relies on to terminate the Agreement without paying the 2% fee – First Catholic must prove: (1) it provided CUSO with written notice of termination at least 60 days before the termination date; (2) it reasonably believes CUSO materially breached the representations, warranties or covenants made in the Subservicing Agreement; and (3) it exhausted the dispute resolution procedures described in Section 3.07 of the Correspondent Services Agreement.

First Catholic says it is relieved of its burden to prove exhaustion of the dispute resolution procedures described in the Correspondent Services Agreement; neither

party can locate the Correspondent Services Agreement, and it is unknown whether the parties even signed such an Agreement. According to First Catholic:

> The only contract between the parties is the 2002 Subservicing Agreement. While the Subservicing Agreement refers to exhaustion of dispute resolution procedures, those "procedures" cannot be located and the parties will need to press forward on the executed document they have. Further, First Catholic has attempted, for months, to resolve the dispute prior to litigation.

Reply Brief, p. 2.

The Court disagrees with First Catholic. First, the Subservicing Agreement is evidence that: (1) the parties signed the Correspondent Services Agreement; and (2) the Correspondent Services Agreement is intertwined with the Subservicing Agreement:

1. [First Catholic] and [CUSO] have entered into [a] Mortgage Loan Correspondent Services Agreement, dated May 6, 2002 (the "Correspondent Services Agreement")[.]

2. [First Catholic] and [CUSO] desire to enter into this Agreement to set forth the terms and conditions under which [CUSO] will service certain mortgage loans originated and funded by [First Catholic] from time to time pursuant to the Correspondent Services Agreement[.]

3. Either party may . . . terminate this Agreement . . . following the exhaustion . . . of the dispute resolution procedures described in Section 3.07 of the Correspondent Services Agreement[.]

Second, the fact that CUSO did not mention First Catholic's failure to exhaust the dispute resolution procedures during the pre-trial negotiation process is immaterial; CUSO is now arguing that First Catholic failed to exhaust.

Finally, the fact that CUSO and First Catholic engaged in a pre-trial negotiation process does not mean, that that process was the procedure described in the Correspondent Services Agreement.

## III.   CONCLUSION

Even assuming First Catholic can establish the first two elements under paragraph 8.2(a) (60-days written notice and material breach), First Catholic has not met its burden to prove it exhausted the dispute resolution procedures. First Catholic is unlikely to succeed on the merits, and its motion is **DENIED**.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: March 1, 2010

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 1, 2010.

s/Carol A. Pinegar
Deputy Clerk